**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| JAMAINE BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-CV-28 |
| | ) | |
| TI AUTOMOTIVE LIGONIER | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss or, in the Alternative, for

Summary Judgment filed by Defendant TI Automotive on April 8, 2019 (ECF 8). Plaintiff

Jamaine Brooks filed a response in opposition on July 16, 2019 (ECF 26), and TI Automotive

filed a reply on August 13, 2019 (ECF 31). The Court concludes the Defendant's motion is

properly addressed as one for summary judgment and, for the reasons discussed below, the

motion is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant

and against Plaintiff.

**BACKGROUND**

Plaintiff Jamaine Brooks states that he "worked for Defendant TI Automotive Ligonier

Corporation from about November 7, 2017 to about February 6, 2018." Complaint (ECF 1), p. 1.

Brooks alleges in his Complaint "that he was discriminated against, harassed, and experienced a

hostile work environment because of and on account of his sex (male), and he contends that he

was retaliated against and discharged because he reported the sexual harassment/hostile work

environment[.]" *Id*., p. 2. Brooks alleges that his supervisor during his time at TI Automotive,

Jennifer Craine, sexually harassed him, creating a hostile work environment. Brooks filed a charge of discrimination with the EEOC on March 19, 2018, in which he alleged that he "worked as an employee" for TI Automotive, that he experienced harassment and a hostile work environment, and that he was fired just hours after having complained about the harassment "to Craine's boss, 'Matt.'" Charge of Discrimination (ECF 26-1), p. 1. However, Brooks also acknowledges in his EEOC Charge that "[h]e was employed [at TI Automotive] by way of a staffing agency." *Id*. He even states that he "went to the staffing agency and . . . submitted a written complaint of discrimination and sexual harassment against Craine." *Id*., p. 2. The EEOC issued Brooks a Notice of Right to Sue letter on November 1, 2018 (ECF 1-2). He filed this lawsuit on January 29, 2019, naming TI Automotive as the only defendant.

While Brooks states in his Complaint that he "worked for Defendant TI Automotive," and states in his EEOC Charge that he was an "employee of the Respondent at all time material to this Charge[,]" TI Automotive claims that is not true. The Company contends that Brooks was placed by a staffing agency called Surge Staffing into a position with another company called ThyssenKrupp, which in turn had a contract with TI Automotive "for post manufacturing quality inspection at TI Automotive's Ligonier facility." Brief in Support of Motion to Dismiss or for Summary Judgment (ECF 8), p. 10. The issue about who employed Brooks is the sole issue presented in TI Automotive's motion. The Company asserts that "Plaintiff Jamaine Brooks was never an employee of [TI Automotive] and Plaintiff has not sufficiently pled that he was. Therefore, Plaintiff's Title VII claims against the Company fail to state a claim." Motion to Dismiss or for Summary Judgment, p. 1. TI Automotive states that it "informed Plaintiff of the subject matter of this Motion, namely that Plaintiff was not its employee either directly or under

2

a joint employer theory, but Plaintiff has refused to voluntarily dismiss [his] claims against

Defendant." *Id.*, p. 2.

## STANDARD OF REVIEW

As stated above, TI Automotive seeks dismissal of Brooks' Complaint pursuant to Rule

12(b)(6) because he fails to state a viable claim against the Company, which was not his

employer, did not terminate him, and therefore is not the proper defendant in this lawsuit. TI

Automotive also submitted affidavits and other documents as evidence to support its argument

that it was not Brooks' employer, which is why the Company captioned its motion as one under

Rule 12(b)(6) *or* Rule 56. In his response in opposition to the motion, Brooks submitted his own

affidavit as well as many other documents, some of which are relevant to the present (and

dispositive) issue and some of which are not.[1] Plaintiff's Response (ECF 26-1 through 26-6).

"'A motion under Rule 12(b)(6) can be based on the complaint itself, documents attached

to the complaint, documents that are critical to the complaint and referred to in it, and

information that is subject to proper judicial notice.'" *St. John's Hosptial of Hosp. Sisters of*

*Third Order of St. Francis v. Nat'l Guardian Risk Retention Grp., Inc.*, 2019 WL 1431224, at *2

(C.D. Ill. Mar. 29, 2019) (quoting *Geinosky v. Cocuity of Chicago*, 675 F.3d 743, 745 n.1 (7th

Cir. 2012)). "If additional materials are relied upon, the motion must be converted to one for

summary judgment under Rule 56." *Id*. As this Court has explained:

> "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are
> presented to and not excluded by the court, the motion must be treated as one for
> summary judgment under Rule 56." Fed.R.Civ.P. 12(d). Thus, pursuant to Rule

---

[1] For example, Brooks submitted copies of photographs and text messages to support his
claim that he was sexually harassed. This evidence is irrelevant to the issue before the Court,
which is whether Brooks has sued the wrong defendant.

> 12(d), the court "may (1) 'convert the 12[(b)] motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule,' or (2) 'exclude the documents attached to the motion [for judgment on the pleadings] and continue under Rule 12.'" *Tradewinds Glob. Logistics, LLC v. Garrett's Transp., LLC*, 2015 WL 8362401, at *2 (S.D. Ind. Dec. 8, 2015) (alterations in original) (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). The court has discretion in determining which option to choose. *Id*. (citing *Levenstein*, 164 F.3d at 347; *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009)).

*Bissonnette v. Podlaski*, 2017 WL 3593820, at *4 (N.D. Ind. Aug. 21, 2017).

In the present case, the Court will assess TI Automotive's motion under the Rule 56 standard. Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). "[S]peculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

**DISCUSSION**

To reiterate, TI Automotive argues that Brooks states no claim against the Company and that it is entitled to judgment as a matter of law because it was *neither* Brooks' employer nor his joint employer. TI Automotive presents evidence to support its position. Rather than present contrary evidence that raises a material fact issue, Brooks attempts to survive TI Automotive's motion merely by muddying the waters. Rather than present evidence that TI Automotive was his employer and therefore a proper defendant, Brooks offers only conclusory statements "that TI Automotive . . . was the place where Plaintiff worked, was the entity for whom Plaintiff engaged in work, and at a minimum, was a 'joint employer' of the Plaintiff[.]" Plaintiff's Response (ECF 26), p. 2. Brooks also argues that "[t]he final DNR [do not rehire] communication regarding Plaintiff's placement with Surge Staffing was made by TI Automotive [personnel] . . . not [personnel] from any other employer as indicated by the Defendant[.]" *Id*., pp. 2-3. But TI Automotive presents conclusive evidence that this assertion is not correct and that the decision to terminate Brooks' employment and to not rehire him came from Surge Staffing and/or ThyssenKrupp, *not* from anyone at TI Automotive. The Company elaborates on its position as follows: "Neither Plaintiff's Complaint nor any of its exhibits includes any additional information regarding which staffing agency employed him, the relationship between the staffing agency and TI Automotive, whether TI Automotive had any control over his employment, or any other facts supporting an employment relationship." Brief in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF 8), p. 8.

In support of its argument, TI Automotive presents affidavits from Norma Sanchez, the Human Resources Manager of the Company's Ligonier facility. Sanchez states in her affidavit as

follows:

> Upon receipt of Plaintiff's EEOC charge, TI Automotive searched its records to determine whether Plaintiff was its employee. Plaintiff has never been an employee of TI Automotive, at its Ligonier or any other facility. . . . TI Automotive did not have a contract with Surge Staffing to place employees at its Ligonier facility during the time that Plaintiff claims he worked for TI Automotive. TI Automotive has no control over ThyssenKrupp employees. TI Automotive has only one employee, its Quality Manager, who interacts with ThyssenKrupp management at the Ligonier facility. No TI Automotive employees, including TI Automotive Quality Manager have any supervision authority over ThyssenKrupp employees. TI Automotive does not give direction to ThyssenKrupp regarding how to perform its work. TI Automotive does not have any control over scheduling or performance of work performed by ThyssenKrupp. TI Automotive does not the authority to hire or fire ThyssenKrupp employees. TI Automotive does not require any specific skills for the work performed by ThyssenKrupp employees and does not have any visibility [sic] into the nature of ThyssenKrupp's employees, skills or how they are acquired. TI Automotive does not pay ThyssenKrupp's employees, but rather, makes payments to ThyssenKrupp based on the quantity of parts inspected.

Defendant's Brief in Support, Affidavit of Norma Sanchez (ECF 8-1), pp. 2-3. Also in her affidavit, Ms. Sanchez notes that "TI has never employed a person named Jennifer Craine at its Ligonier facility." *Id*., p. 2, ¶ 6. TI Automotive also presents an affidavit from Anna Eddy, who states that she "currently work[s] in TI Automotive's Ashley facility, but assisted with HR functions for TI Automotive's Ligonier facility from 2/23/16 to present." *Id*. (ECF 8-2). Eddy states in her affidavit as follows:

> In order to assist in TI Automotive's investigation regarding Jamaine Brooks' EEOC charge, I contacted the two staffing companies with which TI Automotive worked during the periods of Plaintiff's alleged employment, due to his allegation in the EEOC charge that he was "employed in the position by way of a staffing company." Both Elwood Staffing and People Link Staffing Solutions confirmed that they have no record of Jamaine Brooks ever having been an employee.

*Id*., p. 2. Attached to Ms. Eddy's affidavit are "true and correct copies of the emails I received from Elwood Staffing and People Link Staffing Solutions regarding Jamaine Brooks which state

that Brooks was never an employee of either company." *Id*. This additional evidence confirms TI

Automotive's position that Surge Staffing, with whom TI Automotive *did not* have a contract,

placed Brooks in the employ of ThyssenKrupp, which in turn *did have* a contract with TI

Automotive to perform quality control inspections at the Ligonier facility. ThyssenKrupp then

placed Brooks at the Ligonier facility. TI Automotive argues that since it did not employ Brooks

and had "no control or supervision over any entity that employed Plaintiff[,]" it was never an

employer or joint employer for purposes of Title VII. TI Automotive states as follows:

> Counsel for Plaintiff alleges that Plaintiff was employed by Surge Staffing–with
> which TI Automotive does not have a contractual relationship. It is
> possible–though Plaintiff has not even alleged as much in his Complaint–that he
> was employed by Surge Staffing, and placed with ThyssenKrupp, a company
> performing post manufacturing quality inspections at TI Automotive's Ligonier
> facility. However, if true, Plaintiff has not met his burden regarding even alleging
> his proper employment. Even if he had, employees of ThyssenKrupp are not
> employees of TI Automotive as a matter of law.

*Id*., p. 16.

In his response brief, Brooks concedes that Craine was "an employee of ThyssenKrupp,

who made up a false allegation to have the Plaintiff terminated after she learned that he reported

the sexual harassment." Plaintiff's Response to Defendant's Motion to Dismiss or in the

Alternative, for Summary Judgment (ECF 26), p. 3. Brooks also states that he "reported the

harassment to Express Staffing, the agency who placed Jennifer Craine with ThyssenKrupp." *Id*.

Brooks also acknowledges that the individuals to whom he complained about sexual harassment,

"Todd Campbell and Matthew Andonian . . . were ThyssenKrupp employees who reported

directly to TI Automotive Human Resources Heads." *Id*. Despite these factual concessions,

which support TI Automotive's position that it was not Brooks' employer, Brooks nonetheless

insists that "[a] second and final DNR [do not rehire] request to Surge came from a 'Team Lead at TI Automotive' per the message sent to Surge Staffing on March 22, 2018[.]" *Id*. This is the single piece of "evidence" on which Brooks' argument rests. In other words, while conceding that Craine, Campbell and Andonian were employees of ThyssenKrupp (and that he was employed at ThyssenKrupp through another staffing agency, Surge Staffing), Brooks insists that "TI Automotive's personnel were directly involved in my termination as follows: . . . The final DNR (do not rehire) notice sent to Surge Staffing came from the team lead at TI Automotive on March 22, 2018[.]" Plaintiff's Response Brief (ECF 27), p. 3. Indeed, the final communication indicating that Brooks should not be rehired, which involved only ThyssenKrupp employees, makes reference to a "team lead at TI Automotive" as the individual who made that request. But TI Automotive explains that "Surge Staffing's own analysis of its records concludes that any reference to a TI Automotive Team Lead in Surge Staffing's records regarding Brooks actually references Jennifer Craine[,] a ThyssenKrupp lead (through Express Staffing)." Defendant's Reply Brief (ECF 31), p. 4. In support of this clarification of the phrase "team lead at TI Automotive," the Company presents the affidavit of Robert G. Parker, Assistant General Counsel at Surge Staffing. Parker states that "[a]ny reference to a TI Automotive Team Lead in Surge Staffing's records regarding Brooks actually references Jennifer Craine, a ThyssenKrupp team lead. TI Automotive did not end Brooks' assignment with ThyssenKrupp." Affidavit of Robert G. Parker (ECF 31-1), p. 3. Parker also states as follows:

> Jamaine Brooks . . . was employed by Surge Staffing. . . . Surge Staffing placed Brooks at ThyssenKrupp in Ligonier on or around November 2017. This placement was part of a temporary assignment to perform inspection work. TI Automotive was not Brook's employer. TI Automotive did not have any contractual relationship with Surge Staffing. TI Automotive did not have the

8

authority to end Brook's assignment with ThyssenKrupp.

*Id*. In short, the phrase "team lead at TI Automotive" actually referred to Jennifer Craine, who was a team lead at ThyssenKrupp *placed at* TI Automotive, not a team lead *employed by* TI Automotive. The context in which the phrase was used makes clear that neither Craine nor Brooks were employed by TI Automotive; rather, both were placed with ThyssenKrupp through third party staffing agencies.[2]

Despite the clarification and explanation of the phrase "team lead at TI Automotive" as it was used in the communication confirming that Brooks was not to be rehired, Brooks insists that TI Automotive must have been at least his "joint employer" for purposes of Title VII and therefore a proper defendant in this case. Brooks says this is so because he believes it to be so. He makes the following assertions in his own affidavit to support his position:

---

[2] Brooks included among the documents he submitted with his response an "Employee Summary" record from Surge Staffing. Plaintiff's Response (ECF 26-6). In that document, a Surge Staffing employee named Nakeve Kelsaw made notes regarding Brooks' employment and indicated that Jennifer Craine sent an email on February 7, 2018, stating that Brooks should be terminated due to performance issues. *Id*., p. 2. The Employee Summary also indicates that Kelsaw spoke to Brooks that same day and he complained about sexual harassment by Craine. *Id*. The document further indicates that Surge Staffing received a "DNR from ThyssenKrupp" on that date and that the request came from Craine. *Id*., p. 1. The Summary indicates that Brooks "stated that he will be in after work to speak with the staffing specialist and to write a formal statement." *Id*. Then, just over one month later on March 22, 2018, the following entry was made in Brooks' Employee Summary:

> Assignment . . . ended[.] The Assignment Ended due to Performance: Attendance
> & End Reason: Attendance, calling off to many times, DNR by team lead at TI
> automotive.

*Id*. (punctuation and grammar in original). So while Craine apparently was the person requesting that Brooks be terminated from working for ThyssenKrupp, the evidence shows that she was not an employee of TI Automotive, despite the fact that she was identified in one sentence as a "team lead at TI Automotive."

During my time at TI Automotive Ligonier Corporation, I got up in the morning and drove to Ligonier and drove to work at TI Automotive Ligonier Corporation [sic]. I entered into the building called "TI Automotive." My work consisted of: inspection of parts. During my time at TI Automotive . . . I was supervised by Jennifer Crainee. It was always my understanding that regardless which agency or which people for which agencies were there, my ultimate employer was TI Automotive. . . . Finally, TI Automotive, to my understanding, terminated my employment and indicated that I was "DNR" (do not rehire) based on what Surge Staffing had indicated to me. So, TI Automotive personnel made the determination to terminate my employment.

Affidavit of Jamaine Brooks (ECF 26-3). Brooks concludes his affidavit by claiming that "TI Automotive's personnel were directly involved in my termination as follows: The final DNR (do not rehire) notice sent to Surge Staffing came from the team lead at TI Automotive on March 22, 2018[.]" *Id*.

Brooks' factual assertions are conclusory and contradicted by the evidence. He claims that TI Automotive was his employer because that is where he went to work each day, that it "was always my understanding that . . . my ultimate employer was TI Automotive," and that "TI Automotive, to my understanding, terminated my employment." TI Automotive insists (and is correct) that Brooks' conclusory factual assumptions fail "to create a joint employment relationship between Plaintiff and TI Automotive[.]" Defendant's Reply, p. 7. "Most importantly, Surge Staffing itself admits that its record referencing TI Automotive is not accurate but is instead simply a clerical error. It admits that any reference to a TI Automotive team lead in Surge Staffing's records regarding Brooks actually references Craine, a ThyssenKrupp team lead (through Express Staffing). . . . Surge Staffing itself admits that TI Automotive did not have the authority to end Plaintiff's assignment and did not end Plaintiff's assignment with ThyssenKrupp." *Id*., p. 9 (citing Parker Affidavit). TI Automotive concludes its argument as

follows:

> It appears that Plaintiff is confused regarding his employer, the employer of
> Jennifer Craine, and the relationship between TI Automotive and any entity which
> had control over his employment. Rather than properly investigating his claims
> and his true employer, Plaintiff has filed the instant action despite receiving
> information from TI Automotive that it is not the proper entity in this suit.
> Regardless, based upon the affidavits of Sanchez and Eddy, the evidence is clear
> that TI Automotive did not employ Plaintiff and cannot be liable under Title VII.

Defendant's Brief in Support, p. 17.

TI Automotive correctly asserts that "[i]n order to bring a Title VII claim against TI

Automotive, Plaintiff must sufficiently allege the existence of an employment relationship

between TI Automotive and Plaintiff." *Id.*, p. 12 (citing *Knight v. United Farm Bureau Mut. Ins.

Co.*, 950 F.2d 377, 380 (7th Cir. 1991)). TI Automotive also notes that "[t]he Seventh Circuit

Court of Appeals recently clarified the joint employer test for claims under Title VII." *Id.* (citing

and quoting *Frey v. Coleman*, 903 F.3d 671 (7th Cir. 2018)). As TI Automotive discusses in its

brief, the Seventh Circuit in *Frey* explained as follows:

> The place to begin when evaluating the existence vel non of a joint employment
> relationship is *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79
> (7th Cir. 1991). *Knight* instructs that a court in this circuit must employ an
> "economic realities" test which is, in its essence, an application of general
> principles of agency law to the facts of the case. *Id.* at 378; *Love* [*v. JP Cullen &
> Sons, Inc.*], 779 F.3d [697, 702 (7th Cir. 2015)]. In doing so, a court must consider
> the following:
>
> > (1) the extent of the employer's control and supervision over the worker,
> > including directions on scheduling and performance of work, (2) the kind of
> > occupation and nature of skill required, including whether skills are
> > obtained in the workplace, (3) responsibility for the costs of operation, such
> > as equipment, supplies, fees, licenses, workplace, and maintenance of
> > operations, (4) method and form of payment and benefits, and (5) length of
> > job commitment and/or expectations.
>
> *Knight*, 950 F.2d at 378-79. Of these factors, "the employer's right to control is

the most important," and a court must give it the most weight. *Id*. at 378.

> Although the *Knight* test began as a way to differentiate between employees and independent contractors, it soon came to be used in this circuit to determine which entity or entities should be considered to be an employer for purposes of Title VII liability where there was more than one putative employer. See, e.g., *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017) (using *Knight* test to consider whether a client of an inspection and quality control company for whom the plaintiff provided services was a joint employer for purposes of Title VII); *Bridge v. New Holland Logansport, Inc*., 815 F.3d 356, 361 (7th Cir. 2016) (using *Knight* test to determine whether commonly-owned entities could be considered joint employers for the purposes of counting employees for Title VII coverage); *Love*, 779 F.3d at 702 (applying *Knight* factors to determine whether contractor or subcontractor or both were plaintiff's employer for Title VII purposes). And we know our case law is on the right track because the Supreme Court has articulated a similar test for determining whether an employer-employee relationship exists for purposes of ERISA–a statute which contains the same definition of "employee" as Title VII. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). We have held that our *Knight* five-factor test is the essential equivalent of the Supreme Court's *Darden* test. *Mazzei v. Rock N Around Trucking, Inc.*, 246 F.3d 956, 963 (7th Cir. 2001).

*Frey v. Coleman*, 903 F.3d 671, 676 (7th Cir. 2018).

In the present case, the evidence shows that TI Automotive was *not* Brooks' employer. He was employed by ThyssenKrupp to perform quality inspection tasks at TI Automotive's Ligonier facility, where ThyssenKrupp was contracted to perform those functions. Brooks was placed with ThyssenKrupp through Surge Staffing. Of course, Brooks does not contest those facts nor does he present any evidence to refute TI Automotive's assertions that it had no control over his work and no authority to hire or fire him. Instead, as discussed above, Brooks attempts to survive the present motion for summary judgment by relying on his subjective belief that TI Automotive was his employer because the Company owned the facility in which he worked each day. But Brooks' assertion that "[i]t was always my understanding that regardless which agency or which people for which agencies were there, my ultimate employer was TI Automotive" is a

legal conclusion, not a reasonable inference, and is contradicted by the evidence presented by TI Automotive. TI Automotive did not employ Brooks and had no authority to fire him–facts that he fails to dispute with any admissible evidence (or any evidence at all, aside from his subjective belief). In short, Brooks sued the wrong entity and TI Automotive is entitled to judgment as a matter of law on Brooks' claims for discrimination and retaliation.[3]

## CONCLUSION

For the reasons explained above, the motion to dismiss or in the alternative for summary judgment is deemed to be one for summary judgment and is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant TI Automotive and against Plaintiff Jamaine Brooks.

Date: October 2, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　　 /s/　William C. Lee
　　　　　　　　　　　　　　　　　　　　　　　　　William C. Lee, Judge
　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Court
　　　　　　　　　　　　　　　　　　　　　　　　　Northern District of Indiana

---

[3] In the conclusion to its brief in support of its motion, TI Automotive states that "Defendant also asks for its costs and fees in having to write this Motion despite having already informed Plaintiff that TI Automotive as not the proper Defendant in this action." Brief in Support (ECF 8), p. 17. While the request might not be unreasonable under the circumstances–given that counsel for TI Automotive informed counsel for Brooks prior to filing the motion that the Company was not Plaintiff's employer–the prejudice or harm that TI Automotive experienced was minimal. True, the Company had to pay its lawyers to file the present motion, but this was done at a very early stage in this case–even before the parties engaged in much formal discovery. TI Automotive filed its motion to dismiss or for summary judgment on April 8, 2019, just a week after receiving the Summons in this case. At the Rule 16 conference held on May 16, 2019, Magistrate Judge Susan Collins ordered that the parties engage in "discovery on [the] limited issue of who employed [Plaintiff]" and "defers approval of [the] Report of Parties' Planning Meeting" pending that limited discovery and the resolution of TI Automotive's dispositive motion. This saved both sides a great deal of time and money. It's a close call, but the Court is not inclined under the circumstances to grant fees to TI Automotive as requested.